IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| SD, A Minor, By and Through Her Next Friend and Parents, JIMMY DAVIS AND DIANE DAVIS, <br><br>     Plaintiff, <br><br> v. <br><br> HOUSTON COUNTY SCHOOL DISTRICT, <br><br>     Defendant. | <br><br><br> CIVIL ACTION <br> NO.  5:12-cv-228(MTT) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW, SD, a minor, by and through her next friend and Parents, Jimmy Davis and Diane Davis and further, by and through counsel, files her Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment as follows:

FACTUAL BACKGROUND

Plaintiff SD attended Perry Middle School, a school under the control of defendant School District, during the 2010-11. (Deposition of SD, p. 6).  During the fall, several male students would harass her by "touch[ing] [SD's] butt sometimes and they [would] poke [SD's] boobs." (Deposition Exhibits, No. 1).  Further, when she went to her locker, they would "fill" on her.  (Deposition Exhibits, No. 1).  SD tried to tell the teacher, but she was told just to "sit down in [her] chair." (Deposition of SD, p. 17).

In late October, 2010, SD reported these incidents to her mother.  (Deposition of Diane Davis, p. 8).  The following Monday, SD's mother called Dr. Alfreda Hall, the Asst. Principal at Perry Middle School, to discuss the harassment. These were not isolated incidents, but had been "ongoing."  (Deposition of Diane Davis, p. 8).

Though not required prior to filing the instant complaint, Plaintiff did seek an administrative remedy by filing a complaint with the U.S. Department of Education, Office of Civil Rights ("OCR").  A copy of the findings was included as Exhibit "B" to plaintiff's Complaint (the "OCR Report").

After the initial report by SD's parents, Mr. Davis contacted Dr. Hall the following day to find out about the investigation.  (Deposition Exhibits, No. 5, p. 2; OCR Report, p. 7).  Dr. Hall told Mr. Davis that she completed her investigation and that there would be no punishment for the perpetrators because there were no witnesses.  (Deposition Exhibits, No. 5, p. 2).  Rather, she gave the boys "a good talking to" and "wrote them up."  (Deposition Exhibits, No. 5, p. 3).  Dr. Hall <u>did</u> <u>not</u> inform Mr. Davis that she received information "that there were <u>many</u> incidents of inappropriate sexual touching going on at the School."  (OCR Report, p. 7).  And contrary to the School Districts own rules, neither the Superintendent or the police were notified of the harassment. (Exhibit "B" to Pl.'s Complaint, p. 38; Deposition of Diane Davis, p. 9; Deposition Exhibits, No. 5, p. 3).

As a result of the harassment that occurred in the fall of 2010, SD did not feel comfortable at school.  (Deposition of Diane Davis, p. 30).  She experienced nosebleeds because of everything that was going on and nothing was being done about it.  (Deposition of SD, p. 11).  While SD did not receive any psychological treatment, she was always "afraid that someone was going to grab her or say something horrible to her." (Deposition of Diane Davis, p. 30).  And following the incidents of harassment, SD brought her work home, requiring more assistance from Ms. Davis.  (Deposition of Diane Davis, pp. 39-30).

THE INSTANT ACTION

Plaintiff filed her Complaint against defendant School District on June 18, 2012.[1] The Complaint sets forth allegations of defendant School District's violation of alleging violations of the Educational Amendments, Title IX, 20 U.S.C. § 1681, violations of the Civil Rights Act, 42 U.S.C. § 1983, pendent state law claims and attorney's fees/costs. Defendant answered and after discovery, filed its Motion for Summary Judgment.

**ARGUMENT AND CITATION OF AUTHORITY**

SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "As the moving party, [the defendant] has the burden of showing the absence of genuine issue of material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); See also Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986); Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 918 (11th Cir. 1993). If the moving party carries its burden, the party opposing the motion is required to show the existence of a genuine issue of material fact. Hairston, 9 F.3d at 918. A factual dispute is "genuine" if "a reasonable jury could return a verdict for the non-movant," and there is "a real basis in the record" for the factual dispute. Id. at 919. The district court cannot weigh conflicting evidence or make credibility

---

[1] Initially, the action was filed against the Houston County School Board, the Superintendent and Principal, but dismissed as to the individuals and amended for misnomer to reflect the correct defendant, Houston County School District.

determinations; instead, "[the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."' Id., *quoting* Anderson, 477 U.S. at 255.

When evaluating a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. Optimum Techs., Inc., 496 F.3d at 1241. The Court also must ' "resolve all reasonable doubts about the facts in favor of the non-movant.' " Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1274 (11th Cir.2008) *quoting* United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir.1990). Further, the Court may not make credibility determinations, weigh conflicting evidence to resolve disputed factual issues, or assess the quality of the evidence presented. Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1140 (11th Cir.2007). Finally, the Court does not make factual determinations. In re Celotex Corp., 487 F.3d at 1328.

### A. PLAINTIFF'S CLAIMS SURVIVE THE SUMMARY JUDGMENT STANDARD

Despite complaining to her teacher, who told her to sit down in her chair, SD suffered sexual harassment at the hands of fellow students. This type of act is exactly what Title IX attempts to protect.

Defendant correctly cites Title IX in that, "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

Defendant further identifies the appropriate standard. Specifically, to recover under Title IX, a plaintiff must prove four elements: (1) the defendant is a Title IX funding recipient; (2) an "appropriate person" had actual knowledge of the

discrimination or harassment the plaintiff alleges occurred; (3) the funding recipient acted with deliberate indifference to known acts of harassment in its programs or activities; and (4) the harassment was so severe, pervasive, and objectively offensive that it effectively barred the victim's access to an educational opportunity or benefit. Ross v. Corporation of Mercer University, 506 F.Supp.2d 1325 (M.D.Ga. 2007) *citing* Regents of the Univ. Sys. of Ga., 477 F.3d 1282, 1293 (11th Cir.2007).

Applying the four-prong test, it becomes abundantly clear that plaintiff satisfies the threshold requirements and withstands summary adjudication:

1. Defendant Is A Funding Recipient.  There is no dispute that defendant School District is a funding recipient as contemplated by Title IX (see Def.'s Amended Answer).

2. The "Appropriate Person" Had Actual Knowledge[2].  While defendant states that it did not have actual knowledge prior to November 1, 2010, it fails to acknowledge that SD attempted to provide such knowledge of the harassment. However, the teacher simply told her to "sit down in [her] chair." (Deposition of SD, p. 17; Deposition of Diane Davis, p. 47).

3. Defendant Acted With Deliberate Indifference To Known Acts Of Harassment In Its Programs Or Activities.  Contrary to defendant's contention that it acted appropriately, the facts are inapposite.

---

[2] While the law is not entirely clear as to who the "appropriate person" might be, the OCR has provided some guidance: a responsible employee for purposes of notice includes "any employee who has the authority to take action to redress the harassment, who has the duty to report to appropriate school officials sexual harassment or any other misconduct by students or employees, or an individual who a student could reasonably believe has this authority or responsibility."  See Hawkins v. Sarasota County School Bd., 322 F.3d 1279 (11th Cir. 2003).

Sexual harassment is no stranger to Perry Middle School. (Deposition of Diane Davis, pp. 34-35). Over the years, there have been several instances of sexual harassment – all under the watch of the same principal and vice-principal. (Deposition of Diane Davis, p. 36). However, prior acts of indifference are not the only scope of inquiry.

Title IX liability can flow from two "harassment" time periods: (a) when a school exhibits deliberate indifference, before a harassing attack on a student by a fellow student, in a way that makes the student more vulnerable to the attack itself; or (b) when a school exhibits deliberate indifference, after an attack, that causes a student to endure additional harassment. Ross v. Corporation of Mercer University, 506 F.Supp. 2d 1325, 1346 ( M.D.Ga. 2007).

Here, SD clearly suffered additional harassment after the incidents. Specifically, Ms. Davis had to take off work early to come and get SD because ". . . she didn't want to stand out there with all the kids cause she didn't know what was gonna happen to her." (Deposition of Diane Davis, p. 31). SD was also afraid that someone was going to grab her. (Deposition of Diane Davis, p. 29). But, because of the way the situation was handled, SD ". . .[didn't] feel like she could go to an office to make a complaint because she either won't be listened or won't be taken seriously. And even if they do listen to her complaint, nothing is going to happen." (Deposition of Diane Davis, p. 52).

This "deliberate indifference" is further noted in the OCR Report, which reveals that the offending students were not given the punishment in accordance with defendant School District's own rules regarding sexual harassment. (See OCR Report). Of particular note is the OCR's conclusion:

> **OCR concludes that the District subjected the Student and other female students to a sexually hostile environment when it failed to appropriately investigate and take prompt and effective remedial and correct action responsive to the harassment after receiving notice that the Student and other female students had been sexually harassed, in noncompliance with Title IX . . . .**

4. <u>SD's Harassment Was So Severe As To Deny Her Access To Her Educational Opportunity And Benefit</u>.  SD experienced nosebleeds, stress, worry and a great deal of anxiety while at school.  As a result, it greatly impeded the benefit of her educational experience to which she was otherwise entitled.

"A plaintiff need establish that the [harassment] so undermines and detracts from the victim's educational experience, that the student has effectively been denied access to an institution's resources and opportunities." <u>Doe v. School Bd. of Broward County</u>, 604 F.3d 1248 (11th Cir. 2010).

Here, the harassment at the hands of fellow students, as well as the continued harassment resulting from defendant's failure to act, effectively shut her out of her educational experience.  She would not stay around after school.  SD worried in her home room that her boobs would be poked and her butt would be grabbed.  And if it did, she could not depend on defendant, its teachers and administrators to even listen – and if they did, they would not appropriately act upon her complaints.

In light of the facts in total contravention of defendant's assertions, SD has set forth a triable Title IX cause of action and summary adjudication is inappropriate.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that defendant School District's Motion for Summary Judgment be denied.

Respectfully submitted, this 1st day of May, 2013.

/s/ Robert Abney Fricks /s/
_____
ROBERT ABNEY FRICKS
Georgia Bar No. 277135

THE FRICKS FIRM, P.C.
466 S. Houston Lake Rd., Ste. A
Warner Robins, Georgia  31088
Telephone (478) 953-2312
Facsimile (478) 953-2313
rob@fricksfirm.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| SD, A Minor, By and Through Her Next Friend and Parents, JIMMY DAVIS AND DIANE DAVIS,<br><br>    Plaintiff,<br><br>v.<br><br>HOUSTON COUNTY SCHOOL DISTRICT,<br><br>    Defendant. | CIVIL ACTION<br>NO.  5:12-cv-228(MTT) |

## CERTIFICATE OF SERVICE

    This is to certify that I have this day served the foregoing Plaintiffs' Memorandum of Law in Response to Defendant's Motion for Summary Judgment upon:

> William R. Jerles, Esq.
> Daniel, Lawson, Tuggle & Jerles, LLP
> 912 Main Street
> Post Office Box 89
> Perry, Georgia  31069

by placing a true and correct copy of the same in the United States Mail, properly addressed and with sufficient postage affixed thereto to ensure delivery, or in accordance with the electronic service requirements and procedures of the United States District Court for the Middle District of Georgia.

    This 1st day of May, 2013.

                                                     /s/ Robert Abney Fricks /s/
                                                   _____
                                                   ROBERT ABNEY FRICKS
                                                   Georgia Bar No. 277135
THE FRICKS FIRM, P.C.                   Attorney for Plaintiffs
466 South Houston Lake Rd.
Suite A
Warner Robins, Georgia  31088
Telephone (478) 953-2312
Facsimile (478) 953-2313
rob@fricksfirm.com