IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| S.D. a minor, by and through her next friend and parents JIMMY DAVIS and DIANE DAVIS, ) ) ) ) Plaintiffs, ) ) v. ) ) HOUSTON COUNTY SCHOOL DISTRICT, ) ) ) Defendant. ) ) | CIVIL ACTION NO. 5:12-CV-228(MTT) |

## ORDER

Before the Court is the Defendant's motion for summary judgment. (Doc. 20). For the following reasons, the motion is **GRANTED**.

## I.  FACTS

In the fall of 2010, S.D. was a female seventh grade student attending Perry Middle School in the Houston County School District. (Doc. 22 at ¶ 1; Doc. 25 at ¶ 1). On November 1, 2010, Diane Davis, S.D.'s mother, telephoned Alfreda Hall, Perry Middle School's assistant principal. (Doc. 22 at ¶¶ 3, 10; Doc. 25 at ¶ 6).  Mrs. Davis told Hall that S.D. had complained that two male classmates, J.W. and T.H., had been harassing her during school the prior week. (Doc. 22 at ¶ 8; Doc. 24 at ¶ 8).  Hall testified that Mrs. Davis stated "there were boys looking at what her daughter was wearing to school, and she felt that her daughter should be able to wear to school what she wants.  She also said that the boys made inappropriate comments to her." (Doc. 21-7 at 22).

Immediately following the phone call with Mrs. Davis, Hall met with S.D. to discuss Mrs. Davis's concerns. (Doc. 21-7 at 23; Doc. 22 at ¶ 11; Doc. 24 at ¶ 11). Because S.D. did not appear comfortable discussing the allegations aloud, Hall had S.D. prepare a written statement. (Doc. 21-7 at 23). S.D.'s written statement states:

> [J.W.] and [T.H.] will touch my butt sometimes and they will poke my boobs. When I got to my locker they will run up to me and hug me and when they hug me they will fill [sic] on me. And I will tell them to stop and they wont [sic] they do it everyday. And thell [sic] hit me sometimes too on my stomack [sic] and thie [sic].

(Doc. 21-9 at 2).[1]

In their statements of material facts, the Parties seem to agree there were two incidents of physical contact between S.D. and her alleged harassers. (Doc. 22 at ¶ 9; Doc. 24 at ¶ 9). In her deposition, S.D. testified that T.H. and J.W. "felt on her butt the first time" after flirting with her for a couple weeks and "like the next day" they "felt like on [her] thigh." (Doc. 21-4 at 16-17).[2] According to S.D., the second incident occurred the day before, or the day, she met with Hall on November 1. (Doc. 21-4 at 18).[3] It is undisputed that no harassment occurred after Mrs. Davis called Hall.

---

[1] *See also* Doc. 21-4 at 11 ("[T]hey were feeling on my legs. They would touch my boobs. They could grab my butt and they would come up [sic] try to hug me when they knew to leave me alone because I've told them constantly to leave me alone. But they did not.").

[2] S.D. also testified that she was friends with T.H. and J.W. until they started "bothering" her in "November." (Doc. 21-4 at 11-13)
   Mr. Jerles:   All right. When you said at first they didn't bother you during the school year, when did something begin to happen?
   S.D.:   I guess we just got too close of friends. I don't know, I'm not sure. I guess they got too comfortable with me.
   Mr. Jerles:   Okay. And they were comfortable with you? Y'all would talk?
   S.D.:   Yeah, we were just friends.
   Mr. Jerles:   Okay. And y'all would cut up just like everybody else. Is that right?
   S.D.:   Yes, sir.
(Doc. 21-4 at 12). Given that Mrs. Davis called Hall on November 1, it is clear the alleged harassment occurred before November.

[3] Mr. Jerles:   Okay. So we've got a day of touching, a second day of touching and then you talked to Dr. Hall. Is that right?
   S.D.:   Yes, sir.
(Doc. 21-4 at 19).

After interviewing S.D., Hall questioned T.H. and J.W., who denied touching or harassing S.D. (Doc. 21-7 at 35). Hall also spoke with S.D.'s friend, K.L., who S.D. had listed as a witness. (Doc. 21-7 at 4). Although the record does not reveal precisely what K.L. said, Hall testified that K.L. was the only person who "could tell [her] anyone touched [S.D.]," but that S.D.'s allegations "did not match [K.L's] story." (Doc. 21-7 at 24-25).

After speaking with the students, Hall spoke with Thomas Moore, Perry Middle School's principal, about S.D.'s allegations. (Doc. 21-7 at 24). Hall and Moore then met with Laurie Jones, the teacher in whose classroom the alleged harassment occurred. (Doc. 21-7 at 24; Doc. 22 at ¶ 5). Jones told Hall she did not see J.W. or T.H. bothering S.D. and, in a later affidavit, Jones denied that S.D. had reported any harassment to her. (Doc. 21-7 at 32; Doc. 21-3 at 1). This presumably was in response to S.D.'s deposition testimony that after "the second time that they tried to feel" on her, she complained to Jones.[4] (Doc. 21-4 at 15-16). Thus, although there is a dispute as to whether S.D. told Jones about the harassment, it is undisputed that the alleged discussion with Jones would have occurred after the second incident of physical contact.

Also on November 1, Hall left a message for the school resource officer, Craig Fowler. (Doc. 21-7 at 25). Hall and Fowler spoke the next day about S.D.'s allegations, and Fowler was given a copy of Hall's incident report and the students' statements. (Doc. 21-7 at 26-27).

On November 2, Hall called Mrs. Davis to report on her investigation. She told Mrs. Davis only S.D.'s friend, K.L., could corroborate any of S.D.'s allegations. (Doc.

---

[4] Mrs. Davis also testified this was the only time that S.D. told Jones about the harassment. (Doc. 21-6 at 43).

21-7 at 24-25).  However, Hall also told Mrs. Davis that S.D.'s allegations did not "match K.L.'s story and it brought concern to [her]."  (Doc. 21-7 at 25).  Hall told Mrs. Davis to contact her if she, or S.D., had any more concerns or issues.  (Doc. 21-7 at 25).  Hall and Mrs. Davis did not speak again regarding S.D.'s allegations.  (Doc. 21-7 at 31).

Hall testified that she was unaware of any other bullying or harassment allegations involving S.D. other than those incidents discussed November 1.  (Doc. 21-7 at 26).  She further states that "[t]here were no findings of – nothing to prove concrete that anyone touched [S.D.];" thus, T.H. and J.W. were not punished by Perry Middle School for S.D.'s allegations.  (Doc 21-7 at 29).  However, it is undisputed that Jimmy Davis, S.D.'s father, at some point was informed that T.H. and J.W. had been punished.[5]  (Doc. 22 at ¶ 30; Doc. 24 at ¶ 30; Doc. 21-5 at 31).

Following the alleged incidents, Hall kept a "close eye" on Jones's classroom.  (Doc. 21-7 at 34).  Hall and Moore also implemented a new locker policy restricting male and female classmates from going to their lockers at the same time.  (Doc. 22 at ¶ 23; Doc. 24 at ¶ 23).  Further, pursuant to the new policy, students were to remain at their desks unless given express permission to go to their lockers.  (Doc. 21-7 at 37).

S.D. remained a student at Perry Middle School through her eighth grade year.  (Doc. 22 at ¶ 22; Doc. 24 at ¶ 22).  The Defendant offered counseling services to S.D., but she declined to participate.  (Doc. 22 at ¶ 31; Doc. 24 at ¶ 31).  S.D. did not receive any outside psychiatric or psychological counseling for the alleged sexual harassment.  (Doc. 22 at ¶ 26; Doc. 24 at ¶ 26).  Prior to the November 1 allegations, S.D. was receiving special education services for ADHD under an Individualized Education Plan

---

[5] Specifically, Mr. Davis contends that James Hines, the Houston County School District Superintendent, informed him that the male students had been punished.  The confusion may arise from the fact that although T.H. denied touching S.D., he was punished for "general conduct" a few days later because he stated that "when he hugs girls, he hits them on the butt."  (Doc. 21-7 at 30, 37, 38).

and was being treated for anxiety.  (Doc. 22 at ¶¶ 27, 28; Doc. 24 at ¶¶ 27, 28).  S.D.'s ADHD and anxiety treatments were not altered following her allegations of sexual harassment.

The Plaintiffs contend that after the alleged incidents S.D. no longer felt comfortable at school and began experiencing nosebleeds.  (Doc. 24 at ¶ 20).  Further, Mrs. Davis testified she had to leave work early to pick up S.D. from school because S.D. was no longer comfortable staying after school.  (Doc. 24 at ¶ 20).  The Plaintiffs also contend that S.D. was always "afraid that someone was going to grab her or say something horrible to her."  (Doc. 25 at ¶ 16).

On November 17, 2010, Mr. Davis filed a complaint with the United States Department of Education, Office for Civil Rights (OCR),[6] alleging the Defendant failed to follow its sexual harassment policy when S.D. told the administration she had been sexually harassed.  (Doc. 4 at 1).  Based on the complaint, the OCR investigated

> whether the District failed to appropriately investigate and take prompt and effective remedial and correction action responsive to the harassment after receiving notice that the Student had been sexually harassed, in noncompliance with Title IX implementing regulation at 34 C.F.R. Section 106.31(a), (b)(1)-(4) and (7).

(Doc. 4 at 1).  The OCR found sufficient evidence to support a finding that the Defendant's investigation into S.D.'s sexual harassment allegations "was not thorough or accurate."  (Doc. 4 at 1, 9).[7]

The OCR also found school officials treated the alleged sexual harassment of S.D. and other female students as isolated incidents, instead of determining whether or

---

[6] The OCR is responsible for enforcing Title IX of the Education Amendments of 1972, as amended 20 U.S.C. §§ 1681 *et seq.*, and its implementing regulation, 34 C.F.R. § 106, which prohibits discrimination on the basis of sex by recipients of federal financial assistance.

[7] The Defendant has not objected to the admissibility of the OCR report, but the Defendant argues that the OCR report is not relevant to the issues before the Court.

not there was a pattern of sexual harassment by one or more male students against these female students. (Doc. 4 at 8). Further, the OCR found it clear that one of the male classmates S.D. accused of harassing her admitted to sexually touching other female students in unrelated incidents and that his behavior was "severe, persistent, and pervasive." (Doc. 9 at 16). The OCR ultimately determined that:

> The evidence supports a conclusion that [S.D.] and other female students were subjected to a hostile environment based on sex due to the conduct of at least one male student that was sufficiently severe, pervasive, and persistent. This behavior interfered with and limited [S.D.] and other female students' ability to participate in and benefit from the education program of the school.

(Doc. 4 at 10). There was no finding or even a suggestion by the OCR that any harassment of S.D. occurred after the Defendant received the required notice of the sexual harassment. Again, it is undisputed that no harassment occurred after Mrs. Davis called Hall.

Based on the OCR's determination, the Defendant was required to implement a Resolution Agreement. (Doc. 4 at 11). The OCR makes clear that the report "is not a formal statement of OCR policy and should not be relied upon, cited, or construed as such. … The complainant may have the right to file a private suit in federal court whether or not the OCR finds a violation." (Doc. 4 at 11).

## II.   SUMMARY JUDGMENT STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party." *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir.

2002); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing…relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The non-moving party does not satisfy her burden "if the rebuttal evidence is merely colorable, or is not significantly probative of a disputed fact."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).  However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor."  *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

**A. The Plaintiffs' Title IX Claim.**

The Plaintiffs bring a claim pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*  (Doc. 16).  The Plaintiffs contend the Defendant should be liable under Title IX for alleged sexual harassment experienced by S.D. while at school.[8]  Title IX provides that:

> [n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to

---

[8] The Defendant has conceded that it is a Title IX funding recipient and, as such, is subject to the provisions of Title IX.  (Doc. 9; Doc. 21 at 6).

discrimination under any education program or activity receiving Federal finance assistance.

20 U.S.C. § 1681.  With regard to Title IX claims based on student-on-student sexual harassment, the United States Supreme Court in *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), held that a school district can be liable "in certain limited circumstances" for student-on-student sexual harassment.  *Davis*, 526 U.S. at 643.  Specifically, a school district is

> properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.

*Id.* at 650.  Thus, at this stage, a court typically must determine whether material issues of fact exist as to (1) whether the Defendant was deliberately indifferent to the alleged sexual harassment of S.D. based on its actual knowledge; and (2) whether the alleged sexual harassment was so severe, pervasive and objectively offensive that it systemically deprived S.D. of access to the educational opportunities at Perry Middle School.  *Hawkins v. Sarasota County School Board*, 322 F.3d 1279, 1285 (11th Cir. 2003).

**1. Whether the undisputed fact that the alleged harassment did not continue after an appropriate person had actual knowledge of the harassment requires summary judgment in favor of the Defendant.**

The Court addresses first an issue raised by the Court and discussed with counsel after the Defendant's motion became ripe.  (Doc. 28).  If the alleged sexual harassment occurred only before the Defendant had notice of the sexual harassment, how, as a matter of simple causation, can the Defendant be liable under Title IX for that harassment?

The Plaintiffs' attorney had two responses. First, he thought there arguably was some harassment after notice was given to Laurie Jones, S.D.'s teacher. Second, the Plaintiffs' attorney suggested that a school district can be held liable for its deficient investigation even though no harassment occurred after the school district was put on notice.

The first response is easily addressed. Even assuming Jones was an "appropriate person" for purposes of notice, it is undisputed that S.D.'s alleged report to Jones occurred after the second incident of physical contact, which occurred, at the earliest, the day before Mrs. Davis called Hall.[9]

With regard to the second response, the Plaintiffs cite no authority suggesting the Defendant can be held liable for its allegedly deficient investigation. While the Court has found no authority addressing the issue, it seems implicit that the purpose of Title IX is to hold a school district liable for harassment that, after notice, it failed to stop. For example, the Eleventh Circuit has said "a Title IX recipient may not be liable for damages unless its deliberate indifference subject[s] its students to harassment. That is, the deliberate indifference must, at a minimum, *cause* [students] to undergo harassment or make them liable or vulnerable to it." *Williams v. Board of Regents of University System of Georgia*, 477 F.3d 1282, 1295-96 (11th Cir. 2007) (internal quotations and citations omitted) (emphasis added). Further, "it must be the deliberate indifference of the recipient that is the *causation* of the harassment suffered by the victim." *Hill v. Madison County School Bd.*, ___F. Supp. 2d ____, 2013 WL 3712330 *7 (N.D. Ala.) (emphasis added).

---

[9] *See* Doc. 21-4 at 25 ("Mr. Jerles: All right, when did you try to talk to [Jones]? S.D: The second day that it happened.").

The Court is comfortable finding, as a matter of law, that the Plaintiffs cannot prove S.D. suffered any injury from sexual harassment as a result of any actionable act or omission on the part of the Defendant. Nevertheless, the Court will address the traditional elements of Title IX liability.

### 2. Whether the Defendant was deliberately indifferent to the alleged sexual harassment of S.D.

The Defendant concedes that an appropriate person, Hall, had actual knowledge of the alleged sexual harassment. (Doc. 21 at 7-8).[10] However, actual knowledge is not sufficient, on its own, to show the Defendant was deliberately indifferent. Instead, the Defendant was "deliberately indifferent" to the alleged sexual harassment of S.D. "only where [the Defendant's] response to the harassment or lack thereof is clearly unreasonable in light of known circumstances." *Davis*, 526 U.S. at 648. This is not a "mere 'reasonableness' standard or a failure to use reasonable care standard similar to negligence." *Hawkins*, 322 F.3d at 1288 n.11 (quoting *Davis*, 526 U.S. at 649); *see also Snethan v. Board of Public Educ. for City of Savannah*, 2008 WL 766569 *3 (S.D. Ga.) ("A school district's negligent failure to prevent peer harassment supports no Title IX liability."). "In essence, Title IX's premise 'is an official decision by the recipient not to remedy the violation.'" *Doe v. School Board of Broward County, Fla.*, 604 F.3d 1248, 1259 (11th Cir. 2010) (quoting *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 290 (1998)).

Here, the Defendant did not act with deliberate indifference. Once Hall was notified by Mrs. Davis about the alleged harassment, Hall immediately began

---

[10] The Court in *Davis* did not explicitly discuss the type of school employee who must know about harassment by a fellow student. However, as noted, the Defendant has conceded that Hall as the Perry Middle School Assistant Principal satisfies the "appropriate person with actual knowledge" requirement, and the Court agrees.

investigating the claim.[11]  She spoke with S.D., S.D's friend K.L., and the two alleged perpetrators.  She contacted the principal and spoke with S.D.'s teacher.  Jones told Hall that she did not see the boys harassing S.D. at the lockers.  Further, neither T.H. nor J.W. admitted to harassing or touching S.D.  Hall also left a message with the school's resource officer, Fowler, and spoke with him the following day regarding the incident.

Because Hall felt she could not substantiate S.D.'s allegations against T.H. and J.W., the boys were not punished for S.D.'s allegations.  However, Hall and Moore took a preventative measure by implementing a new locker procedure to stop male and female classmates from going to the lockers at the same time.  The Defendant's conduct is not "clearly unreasonable in light of known circumstances."  Nor was it "an official decision … not to remedy the violation."

The Plaintiffs contend, with little explanation, that there had been previous instances of sexual harassment during Moore's and Hall's tenure as principal and assistant principal.  (Doc. 23 at 6).  However, the Plaintiffs put forth no evidence, other than Mrs. Davis's blanket assertion, supporting this argument.  Further, even if true, the Plaintiffs fail to explain how knowledge of previous student-on-student sexual harassment allegations impacts the deliberate indifference analysis with regard to S.D.'s claims.

---

[11] Again, there is a factual dispute with regard to whether S.D. complained to Jones, but this dispute is immaterial.  First, it is questionable that a classroom teacher would be an "appropriate person" for purposes of Title IX liability.  *Hawkins*, 322 F.3d at 1286-88 (refraining from addressing the question of whether a teacher could be a source of actual notice to the school board in a student-on-student sexual harassment case, but noting that "[i]n order to answer the question, it would be necessary to examine how [the state] organizes its public schools, the authority and responsibility granted by state law to administrators and teachers, the school district's discrimination policies and procedures, and the facts and circumstances of the particular case.").  Second, as discussed, S.D.'s alleged complaint to Jones was after the second allegation of physical contact, which occurred the day before or the day of Mrs. Davis's telephone call to Hall.

The Plaintiffs argue that the OCR's findings create an issue of fact as to whether the Defendant was deliberately indifferent. Despite the OCR report's unfavorable determination, this argument also fails. First, the OCR report clearly states the report should not be relied upon or construed as a formal statement from OCR. Further, even if it were appropriate to give the OCR findings some weight, the report found the Defendant failed to comply with specific federal regulations and failed to punish T.H. and J.W. in accordance with the Defendant's sexual harassment policy. "The Supreme Court has held that a funding recipient's failure to comply with the regulation 'does not establish the requisite actual notice and deliberate indifference for a private right of action….'" *Ross v. Corporation of Mercer University*, 506 F. Supp. 2d 1325, 1353 (M.D. Ga. 2007) (quoting *Gebser*, 524 U.S. at 292). Although the OCR findings may permit the United States Department of Education to impose administrative penalties, there is no implied right of action under Title IX permitting private recovery for violations of these administrative requirements; thus, any such violations cannot support a claim for deliberate indifference. *Ross*, 506 F. Supp. 2d at 1353. In other words, the issue before this Court, deliberate indifference, was not before the OCR.

Also, the Court has some concern that the OCR report does not reveal the bases for many of its findings. For example, the report seems to say that S.D. had been "touched" on more than two occasions but, as discussed, it is undisputed that there were only two touching incidents. The OCR report gives considerable weight to nonspecific information of sexual harassment suffered by other students but there is no evidence, other than Mrs. Davis's general allegations, of such harassment. Finally, the report concludes that the Defendant "subjected [S.D.] to a sexually hostile environment," but it is undisputed that no sexual harassment occurred after the Defendant received notice. In any event, and whatever weight might be appropriate for the OCR's findings,

the undisputed facts before this Court establish that the Defendant was not deliberately indifferent.

Thus, the Court finds no genuine dispute of material fact exists as to whether the Defendant was deliberately indifferent to S.D.'s allegations of sexual harassment. Hall investigated S.D.'s allegations and took corrective measures. These measures, though perhaps inconsistent with the school's sexual harassment policy, were effective in preventing further harassment. Though Mr. and Mrs. Davis may not have felt the school district did enough, "Title IX does not allow a victim to dictate the remedial action a school must take with regard to sexual harassment." *Ross*, 506 F. Supp. 2d at 1356.

### 3. Whether the alleged sexual harassment of S.D. was so severe that it actually deprived her of access to Perry Middle School's educational opportunities.

Even if the Defendant's actions did amount to deliberate indifference, the alleged harassment was not so severe, pervasive, or offensive as to bar S.D. from accessing educational opportunities or benefits. In the context of student-on-student harassment, "the behavior must be serious enough to have the systemic effect of denying the victim equal access to an educational program or activity." *Hawkins*, 322 F.3d at 1279. Thus, the Plaintiffs must put forth evidence showing the alleged sexual harassment of S.D. was so severe, pervasive, and objectively offensive as to effectively deny her access to Perry Middle School's educational resources and opportunities.

"[T]he most obvious example of student-on-student harassment capable of triggering a damages claim would … involve the overt, physical deprivation of access to school resources." *Davis*, 526 U.S. at 651 (giving the example of a male student physically threatening a female student "every day" and successfully preventing her from using a school resource, e.g., an athletic field or a computer lab, when the school

administrators are well aware of this abuse and refuse to take any action).  Though actual physical deprivation is not required, the Court "must bear in mind that schools are unlike adult workplaces and that children may regularly interact in a manner that would be unacceptable among adults."  *Id.* at 651.  Because of this, it is understandable that in the school setting, students, particularly those in middle school, may often "engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it."  *Id.* at 651-52.

It can be debated whether the sexual harassment described by S.D. was severe, pervasive, and objectively offensive, but even assuming that it was, it did not have the systemic effect of denying S.D. access to educational opportunities.   There is no evidence that S.D. missed school because of the alleged incidents.  In fact, S.D. remained at Perry Middle School for more than a year and a half, through completion of eighth grade.  Moreover, there is no evidence that S.D.'s grades prior to the alleged sexual harassment substantially differ from her grades following the alleged harassment.

Additionally, S.D. chose not to attend the counseling offered by the school following the alleged incidents.  Further, she did not seek outside counseling.  S.D.'s medication for her preexisting ADHD and anxiety did not change following the incidents.  That S.D. no longer felt comfortable at school and got occasional nosebleeds falls short of demonstrating a systemic effect of denying equal access to educational opportunities as a result of alleged sexual harassment.[12]  "The effect of the ability to receive an education must be real and demonstrable," and that is simply not the case here.

---

[12] *See, e.g., Davis*, 526 U.S. 629 (where the plaintiff's grades dropped significantly and her father discovered a suicide note after the harassment); *Murrell v. School Dist. No. 1, Denver, Colo.*, 186 F.3d 1238 (10th Cir. 1999) (where physically disabled student was battered and sexually assaulted on multiple occasions result in self-destructive and suicidal behavior causing her to leave school and enter a psychological hospital).

*Hawkins*, 322 F.3d at 1239 n.13.  The Plaintiffs have not put forth tangible evidence creating a genuine dispute of material fact as to whether S.D. was denied access to educational opportunities because of the alleged sexual harassment.

The Court does not discount the seriousness of T.H. and J.W.'s alleged conduct. No student should be subjected to such behavior and no school should allow such behavior to continue.  The Court finds only that the Plaintiffs have not met the rigorous standard for establishing Title IX liability.

### B. Section 1983 and State Law Claims.

The Plaintiffs failed to respond to the Defendant's argument that it is entitled to summary judgment on the Plaintiffs' § 1983 claim and the Plaintiffs' three state law claims.  On June 19, 2013, the Court ordered the Plaintiffs to address these claims by June 21 or the Court would assume the Plaintiffs had abandoned the claims.  (Doc. 27). The Plaintiffs failed to respond to the Court's order.  Thus, the Court considers the Plaintiffs' § 1983 claim, the Plaintiffs' intentional infliction of emotional distress claim, the Plaintiffs' negligence claim, and the Plaintiffs' breach of contract claim abandoned.[13]

### IV. CONCLUSION

Because the Defendant was not deliberately indifferent to S.D.'s allegation of sexual harassment and because the harassment was not so severe, pervasive, and offensive to deprive S.D. access to her educational opportunities at Perry Middle

---

[13] *See also Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) ("In opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him. There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.  Rather, the onus is upon the Parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

School, summary judgment is appropriate on the Plaintiffs' Title IX claim.  Accordingly, the Defendant's motion for summary judgment is **GRANTED**.

    **SO ORDERED**, this 22nd day of August, 2013.

                              <u>S/ Marc T. Treadwell</u>
                              MARC T. TREADWELL, JUDGE
                              UNITED STATES DISTRICT COURT